UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JEFFREY L. LECKRONE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:17 CV 2144 (JMB) |
| ) | |
| SAINT CHARLES COUNTY, MISSOURI, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on defendants' joint motion for summary judgment. Plaintiff has filed a response in opposition and the issues are fully briefed. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

On October 16, 2010, plaintiff Jeffrey L. Leckrone was arrested by defendant Corporal Robert Bell, III, of the St. Charles County Police Department, for driving while intoxicated. Plaintiff alleges that defendant Bell did not have probable cause to arrest him and improperly took him into custody without first offering him the opportunity to take a breathalyzer test. Plaintiff also alleges that defendant Lieutenant Mark O'Neill signed a citation in which he falsely stated that he had observed plaintiff weaving from lane to lane. In this action filed pursuant to 42 U.S.C. § 1983, plaintiff asserts claims for false arrest and false imprisonment, in violation of the Fourth Amendment, against defendants Bell and O'Neill and their employer, St. Charles County.

### I. Factual Background[1]

On October 15, 2010, plaintiff and his girlfriend Tammy Knapp drove to a restaurant called Sherlock's, where they were regulars. Plaintiff's Deposition [Doc. # 43 at 34, 36].[2] Plaintiff took a seat at the bar while Ms. Knapp went to join some friends. Id. at 17, 37. Plaintiff testified that he had two glasses of rum and Coke before switching to water for the rest of the evening. Id. at 37. He estimated that he stopped drinking alcohol by 7:30 at the latest. Id. at 73. He ate a meal and waited at the bar until midnight when Ms. Knapp was ready to leave. Id. at 37, 45.

As they were leaving Sherlock's, Ms. Knapp asked plaintiff whether he was "okay" to drive. Defendants' Statement of Uncontroverted Material Facts (SUMF) at ¶ 5 [Doc. # 34-3]. Plaintiff assured her he was "absolutely, positively sober," and got behind the wheel. Dep. at 16. Approximately five miles later, defendant Bell pulled plaintiff over.[3] Id. at 67. Bell informed plaintiff that he had been pulled over for cutting off a white van, an assertion plaintiff disputes.

---

[1] This is the third time that plaintiff has attempted to assert legal claims concerning his arrest. As discussed below, plaintiff appealed the revocation of his license that resulted from the arrest. In addition, he apparently filed a law suit against an ex-wife and an ex-girlfriend, alleging that they used their ties to the St. Charles County Police Department to stalk him and set him up for this arrest on a false charge of driving while intoxicated. Plaintiff's Deposition at 41-43 [Doc. # 43]; see also id. at 59 ("This was a setup and a Mafia style hit. The cops gave me a DWI because they were asked to do it by other people. . . . All of this is make-believe, this is made up . . .") .

[2] Materials in the record are cited with the CM/ECF document number and the page number that appears in the red header.

[3] The record is unclear as to which defendant pulled plaintiff over. Plaintiff asserts that he was pulled over by Bell but both defendants Bell and O'Neill apparently testified that plaintiff was pulled over by defendant Lieutenant O'Neill. See Pl. Dep. at 19 (Q: "And you mentioned that it was Officer Bell who pulled you over, but the officer's testimony was you were initially pulled over by Lieutenant O'Neill. . . A: My testimony is that I never saw Mr. O'Neill. I only saw Mr. Bell."). Plaintiff testified that O'Neill directed defendant Bell to pull him over. See id. at 79 (testifying that O'Neill "advise[ed Bell] to do what was done to me."). In his opposition to defendant's motion for summary judgment, however, plaintiff appears to concede that O'Neill was present at his arrest. Opposition at 8 ("Defendant O'Neill testified at deposition that he was present when Defendant Bell performed field sobriety tests of Plaintiff and that [he] was in a supervisory capacity over Defendant Bell at the time of Plaintiff's arrest." [Doc. # 38]. For the purposes of the present motion, it is not material which defendant initially pulled plaintiff over.

Dep. at 61. Defendant Bell asked plaintiff if he had been drinking and plaintiff stated that he had had two alcoholic drinks that evening. SUMF at ¶ 8. Defendant Bell states by affidavit that plaintiff smelled of alcohol and his eyes were bloodshot, glassy and watery. Robert Bell Affidavit at ¶ 5 [Doc. # 34-4 at 4]. Plaintiff disputes Bell's assertion. Plaintiff's Response to SUMF at ¶ 9 [Doc. # 45].

Defendant Bell administered three field sobriety tests to plaintiff.[4] According to Bell, plaintiff had trouble performing two of the three tests. Bell Affidavit at ¶¶ 7-10. Plaintiff concedes that he used his arms to steady himself during the "walk and turn" test and put his foot down three times during the "one leg stand" test. Plaintiff's Response to SUMF at ¶¶ 11-16 [Doc. # 45]. Based on plaintiff's performance on the field sobriety tests, Bell put handcuffs on plaintiff and placed in the back of the patrol car. Bell Aff. at ¶¶ 11-12. Bell states that he then read plaintiff an "Implied Consent" form, which states:

> You are under arrest and I have reasonable grounds to believe you were driving a motor vehicle while you were in an intoxicated or drugged condition. To determine the alcohol or drug content of your blood, I am requesting you to submit to a chemical test of your breath. If you refuse to take the test, your driver license will be immediately revoked for one year. Evidence of your refusal to take the test may be used against you in a prosecution in a court of law. Having been informed of the reason for requesting the test, will you take the test?

Bell Aff. at ¶ 13; see also Implied Consent form [Doc. # 34-4 at 7]. Bell states that plaintiff refused to take the breath test. Bell Aff. at ¶ 14. Plaintiff asserts, "unequivocally," that defendant Bell did not offer him the breath test in the field and "staunchly denie[s]" that he refused to take the test. Pl. Dep. at 29-30. Plaintiff further testifies that he asked to take a breathalyzer test once he arrived at the police station, but Bell refused. Id. at 30-31.

---

[4] Bell administered the Horizontal Gaze Nystagmus, Walk and Turn, and One Leg Stand. Bell Aff. at ¶ 7

Plaintiff's license was automatically revoked by the Missouri Department of Revenue for failure to submit to a chemical test. SUMF ¶ 21. Plaintiff filed a petition for review of the revocation, pursuant to § 577.041.4, Mo. Rev. Stat., (effective Aug. 28, 2010 to Mar. 2, 2014). Petition, Leckrone v. Director of Revenue, No. 1011-CV10905 [Doc. # 34-4 at 42-43]. The matter went to trial in the St. Charles County Circuit Court. Plaintiff testified at the trial, offering the same testimony that he offers through his deposition in this matter. See Pl. Dep. at 59 (agreeing that he testified to the same facts at his trial and deposition, including that he did not refuse to take a breath test). On July 13, 2012, the St. Charles County Circuit Court upheld the revocation of plaintiff's license. Judgment [Doc. # 34-4 at 40].

Defendants Bell and O'Neill move for summary judgment arguing that the decision of the St. Charles County Circuit Court precludes him from relitigating whether his arrest was supported by probable cause. In the alternative, they argue that plaintiff cannot establish that his constitutional rights were violated and that they are entitled to qualified immunity and/or official immunity. Defendant St. Charles County argues that plaintiff cannot establish the existence of an unconstitutional policy or failure to train.

Additional facts will be discussed as necessary to address the parties' arguments.

**II.     Legal Standard**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Rule 56, a party moving for summary judgment bears the burden of demonstrating that no genuine issue exists as to any material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Once the moving party discharges this burden, the non-moving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Anderson, 477 U.S. at 247. The non-moving party may not rest upon mere allegations or denials in the pleadings. Id. at 256. "Factual disputes that are irrelevant or unnecessary" will not preclude summary judgment. Id. at 248. The Court must construe all facts and evidence in the light most favorable to the non-movant, must refrain from making credibility determinations and weighing the evidence, and must draw all legitimate inferences in favor of the non-movant. Id. at 255.

**III. Discussion**

    **A. Defendants Bell and O'Neill**

Plaintiff alleges that defendant Bell falsely arrested him for driving while under the influence and then refused to allow him to take a breathalyzer test to establish that his alcohol level did not exceed the legal limit for driving. He alleges that defendant O'Neill participated in the false arrest by filing a citation in which he falsely stated that plaintiff failed to drive in a single lane. A false arrest claim under § 1983 fails as a matter of law where the officer had probable cause to make the arrest. Kurtz v. City of Shrewsbury, 245 F.3d 753, 758 (8th Cir. 2001). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Ross v. City of Jackson, Missouri, 897 F.3d 916, 920 (8th Cir. 2018) (citation omitted). Defendants argue that the state court has already determined that probable cause existed for plaintiff's arrest and that he is therefore collaterally estopped from bringing his claims in this action.

Drivers on Missouri's public roads are deemed to have impliedly consented to "chemical tests" of their "breath, blood, saliva or urine for the purpose of determining the alcohol or drug content" of their blood if a police officer has "reasonable grounds" to believe they are driving while intoxicated. McKay v. Dir. of Revenue, 382 S.W.3d 119, 121 (Mo. Ct. App. 2012) (citing § 577.020.1, Mo.Rev.Stat., and Brown v. Dir. of Revenue, 34 S.W.3d 166, 171 (Mo. Ct. App. 2000)). A driver may revoke that implied consent and refuse to submit to chemical testing but, upon doing so, the person's driving privileges are subject to administrative revocation by the Director of Revenue pursuant to § 577.041. McKay, 382 S.W.3d at 121. The driver may then petition the circuit court for the county in which the stop or arrest occurred for trial de novo of the administrative revocation. See Newsham v. Dir. of Revenue, 142 S.W.3d 207, 208–09 (Mo. Ct. App. 2004) (citing § 577.041).

Petitioner filed a petition for review pursuant to § 577.041.4. Under the statute, the reviewing court is limited to determining whether (1) the driver was arrested or stopped; (2) the arresting officer had reasonable grounds to believe that the driver was driving while intoxicated; and (3) the driver refused to submit to authorized chemical testing. § 577.041.4 (emphasis added). If one of these elements is not established, the trial court must order the reinstatement of driving privileges. § 577.041.5. "'Reasonable grounds,' as stated in section 577.041.4, is essentially synonymous with probable cause." Newsham, 142 S.W.3d at 209 ("Probable cause to arrest for driving while intoxicated exists when a police officer observes an unusual or illegal operation of a motor vehicle and observes indicia of intoxication upon coming into contact with the motorist.") (citation omitted). In this case, the circuit court ruled in favor of the Director of Revenue and, thus, necessarily found that defendants had probable cause to believe plaintiff was driving while intoxicated and that plaintiff refused to submit to a chemical test of his blood

alcohol. The Court must now decide whether these findings prevent plaintiff from asserting his Fourth Amendment claims here.

"Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Allen v. McCurry, 449 U.S. 90, 94 (1980). Federal courts are required "to give preclusive effect to state court judgments whenever the courts of the State from which the judgments emerged would do so." Id. at 96 (citing 28 U.S.C. § 1738). In Missouri, collateral estoppel applies to an issue when (1) the issue decided in the prior adjudication was identical to the issue in the present action; (2) the prior adjudication resulted in a judgment on the merits; (3) the party against whom estoppel is asserted was a party to, or in privity with a party to, the prior adjudication; and (4) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior adjudication. Coop. Home Care, Inc. v. City of St. Louis, 514 S.W.3d 571, 581 (Mo. 2017) (citation omitted). Under Missouri law, "[w]hether a prior judgment is legally correct is not at issue in applying the doctrine of collateral estoppel." Ideker v. PPG Indus., Inc., 788 F.3d 849, 854 (8th Cir. 2015) (citation and internal quotation omitted).

Plaintiff is collaterally estopped from asserting that defendants lacked probable cause to arrest him or that he refused to take a breathalyzer test because: (1) the identical issues were decided in the circuit court action; (2) the circuit court action resulted in a judgment on the merits; (3) plaintiff was a party to that action; and (4) he had a full and fair opportunity to litigate his claim that his arrest was improper. Plaintiff argues that collateral estoppel is not appropriate here because his burden of proof in this civil action is lower than the burden he faced in the circuit court action. Setting aside the impact of differing burdens of proof on the collateral

estoppel analysis, plaintiff's argument is based on an incorrect statement of the law because the burden of proving all the requisite elements for upholding a revocation falls on the Director of Revenue, not the driver whose license was revoked. See Bruce v. State, Dep't of Revenue, 323 S.W.3d 116, 119 (Mo. Ct. App. 2010) ("The Director has the burden of proving all three elements by a preponderance of the evidence."). Plaintiff additionally argues that collateral estoppel cannot bar his claim here because the state court did not make any findings of fact. Plaintiff's argument is unavailing because, under § 577.041.5, the court's decision in favor of the Director of Revenue necessarily means that the court found that there was probable cause to believe that plaintiff was intoxicated and that he refused to take the breathalyzer test. Because a false arrest claim under § 1983 fails as a matter of law where the officer had probable cause to make the arrest, defendants Bell and O'Neill are entitled to summary judgment.

    **B. Defendant St. Charles County**

Plaintiff alleges that St. Charles County had a "usage, custom or policy" of permitting its law enforcement officers to arrest and imprison people without probable cause and to make false reports in support of the false arrests. Complaint at ¶ 46. He also alleges that the County had "inadequate hiring and training practices and policies" and was deliberately indifferent to the rights of others. Id. at ¶¶ 47-50. Plaintiff has presented no evidence in support of these allegations, arguing only that he should be permitted to proceed on his allegations at trial. Opposition at 9. In the face of a properly supported motion for summary judgment, however, the nonmoving party cannot merely rest on allegations "to get to a jury without 'any significant probative evidence tending to support the complaint.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (citation omitted).

Plaintiff's claim against the County also fails because he has not established that his arrest violated his constitutional rights. The Eighth Circuit has "consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." <u>Mahn v. Jefferson Cty., Missouri</u>, 891 F.3d 1093, 1099–100 (8th Cir. 2018) (citation omitted); <u>see also</u> <u>Granda v. City of St. Louis</u>, 472 F.3d 565, 568 (8th Cir. 2007) ("A claim brought against a municipality under § 1983 is sustainable only if a constitutional violation has been committed pursuant to an official custom, policy, practice or custom of the city."). Plaintiff is collaterally estopped from asserting false arrest and imprisonment claims against defendants Bell and O'Neill and thus his claims against St. Charles County fail as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment [Doc. # 34] is **granted**.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 26th day of November, 2018.